IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

LEON MICHAEL SMITH                                                                                PLAINTIFF

      v.                                    Civil No.  11-5273

CPL. T. FAUBUS, Springdale
Police Department; and OFFICER
ARTHUR, Springdale Police Department                                                   DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff Leon Michael Smith pursuant to 42 U.S.C. § 1983.  Smith proceeds *pro se* and *in forma pauperis.*  Defendants have demanded a jury trial.

Defendants filed a motion for summary judgment (Docs. 32-34).  On October 12, 2012, Defendants filed an amended motion for summary judgment (Docs. 38-40).  On November 6, 2012, an evidentiary hearing was held on the motions for summary judgment to allow Smith to respond to the motion.

Following the hearing, the record was held open to obtain Smith's medical records from the Washington County Detention Center.  Those records have been received and are admitted as Court's Exhibit 1.  The parties were provided copies of these records.  Additionally, Defendants were directed to provide the Court with color prints of the photographs introduced as Plaintiff's Exhibit 1.  The Court has received those color copies and Defendants also provided Smith with a copy.  The motions are therefore ready for decision.

### 1. Background

The Court heard the testimony of the following individuals: (1) Plaintiff Leon Michael Smith; (2) Haley Greenlee; (3) Defendant Kristopher Arthur; and (4) Defendant Corporal Tim Faubus. The sole claim in this case is whether Defendants used excessive force against Smith when he was arrested on October 24, 2011.

### Leon Michael Smith

Smith testified that on October 24th, he was at home in Applegate Apartments located in Springdale, Arkansas. According to Smith, he was inside his apartment when the officers first made contact with him. Earlier, around 10:00 a.m., Smith stated he and his girlfriend, Haley Greenlee, were fighting. The police were called because of the disturbance.

Greenlee went out and asked the police if they had a warrant for Smith's arrest. One of the officers indicated he believed there was a failure to appear warrant on Smith but he could not find any warrants when they ran a computerized search.

Smith asked if he could step out of the apartment to smoke. Three officers then approached him and advised him that he was being arrested. Smith testified he wanted his girlfriend to come over so he started yelling for her.

Smith testified he was handcuffed and his pockets searched. He was told to stand spread eagle and to stop yelling for Greenlee. Smith maintains he was deliberately tripped as they were walking towards the patrol car. Smith fell to the ground. However, he did not know which officer tripped him.

Smith testified that at this point Arthur ran up and punched him in the back of the head. While he was on the ground, Smith asserts he was punched several times in the back of the head

-2-

and shoulders. Smith believes he was struck at least ten times by Arthur. Smith testified he was not resisting in anyway. He had been told to keep quiet.

According to Smith, a taser was used on his back and stomach a number of times. Smith testified that he was being tased as he was being pulled up by his arms and dragged to the patrol car. Smith testified that he was shocked multiple times each time the taser was used. Once at the patrol car, he was told to get in the back. Smith testified that at this point the officers backed off and closed the car door.

Plaintiff's Exhibit 1 consists of a series of fifteen color photographs. The areas depicted include Smith's side, chest, upper and lower back, shoulder, neck, arms, and head. The areas depicted, where a clear view is provided, contain a number of red abrasions. The photographs depict various marks, some appearing to be scratches while others appear to be welts. Smith testified that these marks were a result of being tased.

Smith also testified that he had at least two knots on the back of his head and swelling. While the picture of his head shows some red abrasions on his neck and upper back, the Court cannot discern the presence of any knots.

Smith also submitted two DVDs containing video from the date of his arrest. The first DVD, Plaintiff's Exhibit 2, was taken by Defendant Faubus' dash board camera. The patrol car is partially visible at the bottom of the video screen. The car was not moved during the filming. The video depicts the street, several cars, including at least one patrol car located to the right of the screen, and traffic going by. During the majority of dash cam recording, Faubus is talking to Smith's girlfriend Greenlee. Greenlee describes the disturbance that resulted in the police being called. She indicates that during the altercation, Smith tried to choke her with a blanket.

Pictures were taken of her injuries consisting of scratches on her chest and red marks near her mouth.

The audio indicates that when Smith was told he was being arrested and taken to jail, he began repeatedly yelling for Greenlee. He also yelled at Kendra, his sister. He was told to calm down several times. He continued to yell for Greenlee. Sounds of a struggle can be heard. Smith can also be heard saying "don't hit me," asking why he was being struck, and yelling "ouch." At this point, Greenlee was yelling for someone to help Smith, and for them to stop. She asked to be able to calm him down. Smith was placed in a patrol car.

Sergeant Adreadis can be heard telling Greenlee that they had to tase Smith three times just to get him in the patrol car. Greenlee was taken to her apartment for further questioning and to write a statement.

Plaintiff's Exhibit 3 is a video taken by Arthur's dash cam. It begins when Smith is placed in the back of the car. Smith is visible in the back seat. His hands are cuffed behind his back. Smith continued yelling for Greenlee; repeatedly asserted that he did nothing wrong; asked what the charges were; asked why he had been hit in the back of the head; and wanted to know what would happen to Greenlee if she was lying. Smith also complained that his wounds hurt. Once at the police station the dash cam continued recording and officers could be heard discussing what had occurred.

On the audio, Arthur can be heard stating that it took three people to get Smith in the car. Arthur can also be heard saying that he tased Smith to prevent further problems. Arthur states he "hit" Smith in the side with the taser and walked him into the car with it. Greenlee was taken to her apartment for further questioning and to write a statement.

Smith was charged with aggravated assault--domestic, interference with emergency communications, resisting arrest, and a "white warrant[1]" from his parole officer. Following the incident, Faubus completed a narrative report of the events occurring during the arrest. *Defendants' Ex.* B.

Smith's medical records from the Washington County Detention Center indicate he was seen on November 1st complaining of his chest hurting as a result of being tased. *Court's Exhibit* 1. He was prescribed Elavil and Aleve. *Id.* Smith was seen again on December 13, 2011, complaining of his lower back and side hurting. He was prescribed Ibuprofen and told to increase his intake of water. *Id.* It is not clear whether this second visit was related to the tasing incident.

### Haley Greenlee

Greenlee testified she was in a relationship with Smith and they had a son. She asserted that she was standing outside at the passenger side of Faubus' police car talking to him when she saw Smith fall to the ground. She testified she could hear the taser was going off and saw that Smith was being struck in the head.

Greenlee ran over to where Smith was and saw him fall into the door of the car. She testified Smith was tased again despite the fact that he was already handcuffed. Altogether, Greenlee testified that she heard the noise of the taser going off three or four times. In all the commotion and screaming, Greenlee did not see the taser at any time.

---

[1] " [A] white warrant is used to detain a parolee for investigation of possible parole violations." McAdory v. State, 98 Ark. App. 181, 183 (Ark. App. 2007).

AO72A
(Rev. 8/82)

**Officer Kristopher Arthur**

Arthur testified that he is a patrolman for the City of Springdale Police Department. On the day in question, four officers reported to the scene, both Defendants, Sergeant Lee Adreadis, and Officer Marty Abbott.

On the day in question, he assisted in handcuffing Smith. Smith's arms were drawn backwards and he was cuffed with his hands behind his back. Smith was actively resisting getting into the back of the patrol car and caused a loud disturbance calling for Greenlee. Three officers were present: himself, Faubus, and Abbott.

According to Arthur, Smith was jerking his body around attempting to get free. As a result of his jerking around, he would hit the other officers. Smith put his feet against the door and used force to resist being placed in the car. Arthur testified he tased Smith because of his active resistance. He tased Smith twice until he was secured.

The taser had an air cartridge and two contact points. Arthur removed the cartridge prior to discharging the stun gun. The stun gun releases an electronic shock when it comes into contact with skin. Arthur testified that the electrical shock felt like someone was hitting you with a broom handle or board. The preset duration on the stun gun is five seconds; however, Arthur testified he stopped before the five seconds were up because Smith began to comply with orders. Under the circumstances, Arthur believed the use of force was justified and did not violate departmental policy on the use of force. *Defendants' Exhibit* C.

Arthur testified he did not punch Smith in the back of the head and did not see anyone else strike him. However, during transport, when Smith asked Arthur why he was hit in the back

AO72A
(Rev. 8/82)

of the head, Arthur could be heard on the dash cam recording, *Plaintiff's Exhibit* 3, replying that it was because Smith resisted arrest.

Following the incident, Arthur completed a defensive action report and an arrest report containing a narrative report of the events surrounding the arrest. *Defendants' Exhibit* A. The defensive action report and arrest narrative both indicate the taser was discharged twice by Arthur.

### Corporal Tim Faubus

Faubus testified that he handcuffed Smith. At the time, Smith was resisting by tensing up his body and struggling to get away from the officers. Faubus testified that he was using both his arms and body to control Smith. Arthur saw they were having problems so he came to assist. Faubus testified that he knew at some point that Arthur used his taser.

Faubus asserted that he did not hit or trip Smith. He also stated he did not see any officer punch Smith. Faubus testified that the only thing he did was to escort Smith to the car.

### 2. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

AO72A
(Rev. 8/82)

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (citing, Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3. Discussion

Defendants maintain they are entitled to judgment in their favor on several grounds. First, they maintain all official capacity claims should be dismissed as Smith has failed to allege the existence of a municipal policy, custom or practice that was the moving force behind the alleged constitutional violation. Second, they maintain that Plaintiff has failed to allege that he suffered a substantial physical injury. Third, they maintain Smith has failed to provide facts that will support a claim of excessive force against them. Finally, as to the individual capacity claims, they maintain they are entitled to qualified immunity.

### (A). Excessive Force

"All claims that law enforcement officers have used excessive force in the course of an arrest or investigatory stop of a free citizen should be analyzed under the reasonableness standard of the Fourth Amendment." Winters v. Adams, 254 F.3d 758, 764 (8th Cir. 2001)(citation omitted); see also Henderson v. Munn, 439 F.3d 497, 502 (8th Cir. 2006). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." Graham v.

Connor, 490 U.S. 386, 396 (1989)(internal quotations omitted). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id.

"Not every push or shove violates the Fourth Amendment, but force is excessive when the officers' actions are not objectively reasonable in light of the facts and circumstances confronting them." Rohrbough v. Hall, 586 F.3d 582, 585 (8th Cir. 2009)(internal quotations and citations omitted). "Objective reasonableness depends on the facts and circumstances of the case, the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is activity resisting or attempting to evade arrest by flight." Id. at pg. 586 (internal quotations and citations omitted). This inquiry is made "without regard to [the officers] underlying intent or motivation." Nance v. Sammis, 586 F.3d 604, 609-10 (8th Cir. 2009).

Defendants maintain that Smith's claim is foreclosed because he cannot provide evidence of a "substantial physical injury" to support the claim of excessive force. I disagree. While the degree of injury may be considered, it is considered only in connection with the amount and type of force used. See e.g., Wilkins v. Gaddy, 559 U.S. 24 (2010)(Eighth Amendment case--clarified that the extent of any resulting injury, while material to the question of damage and informative as to the degree of force applied, is not in and of itself a threshold requirement in proving an excessive force claim); Chambers v. Pennycook, 641 F.3d 898, 906-07 (8th Cir. 2011)(Fourth Amendment claim--"it is logically possible to prove an excessive use of force that caused only a minor injury, and a rule that forecloses a constitutional claim in that circumstance focuses on

AO72A
(Rev. 8/82)

the wrong question. The degree of injury should not be dispositve, because the nature of the force applied cannot be correlated perfectly with the type of injury inflicted").

Applying the objective reasonableness standard, I believe there is a genuine issue of material fact as to whether the force employed by Arthur was reasonable. Smith maintains he was hit or struck multiple times. The pictures admitted as Plaintiff's Exhibit 1 indicate Smith sustained multiple abrasions, scratches and welts as a result of the use of force. It is undisputed that stun gun was deployed twice when Smith was handcuffed behind his back. Additionally, three officers were present and there was no indication Smith would flee. In fact, had Smith intended to flee, he had the opportunity to do so when he stepped outside the apartment to smoke. At that time, he was not handcuffed or restrained in anyway. While it may have appeared that he was a danger to Greenlee, the two were kept separately for her safety and to allow both Greenlee and Smith to calm down.

I find no genuine issue of material fact as to whether Faubus employed excessive force. There is no evidence that Faubus used excessive physical force in attempting to handcuff Smith or in attempting to get Smith into the patrol car. In fact, Smith did not testify to any single action taken by Faubus that was unreasonable in light of the circumstances.

### (B).  Official Capacity Claims

"Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. " Gorman v. Bartch, 152 F.3d 907, 914 (8th Cir. 1998)(internal quotation marks and citations omitted). While individual or "personal capacity claims, on the other hand, are those which

allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense." Id. I agree that in this case, Smith has not alleged the existence of any policy, custom, or practice that was the moving force behind the alleged use of excessive force.

### (C). Qualified Immunity

Finally, I turn to the question of whether Arthur is entitled to qualified immunity. "Qualified immunity is a defense available to government officials who can prove that their conduct did 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Carroll v. Pfeiffer, 262 F.3d 847, 849 (8th Cir. 2001)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991)(quoting, Malley v. Briggs, 475 U.S. 335, 343, 341 (1986)). The inquiry is normally one of pure law. J.H.H. v. O'Hara, 878 F.2d 240, 243 (8th Cir. 1989).

The issue of whether a state actor is entitled to the protection of qualified immunity is a two-step process. See Washington v. Normandy Fire Protection Dist., 272 F.3d 522, 526 (8th Cir. 2001) . First, the court must ask whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001). Second, the court must determine if the right was clearly established. See Washington, 272 F.3d at 256.

In Pearson v. Callahan, 555 U.S.223, 236 (2009), the Supreme Court held that "while the sequence set forth [in Saucier ] is often appropriate, it should no longer be regarded as

-11-

mandatory," and courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Id.; see also Nelson v. Correctional Medical Services, 583 F.3d 522 (8th Cir 2009).

Here, as discussed above, viewed in the light most favorable to the Plaintiff, there is a genuine issue of material fact as to whether the evidence shows an objective need for the force alleged to have been used.  As noted above, at the time force was used, there two other officers present and Smith was handcuffed.

In order to overcome claims of qualified immunity, Plaintiff must also show that his constitutional rights were clearly established. A right is clearly established if its contours are sufficiently clear that a reasonable official would have fair warning of the type of action that would violate that right.  "The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person and the test is whether the amount of force used was objectively reasonable under the particular circumstances."  Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001)(internal quotation marks and citations omitted).  While some use of force may be used to obtain compliance with orders, there is a question of fact as to whether Arthur used more force than was reasonably necessary.  Graham, 490 U.S. at 396.

I cannot at the summary judgment stage, resolve factual disputes in Arthur's favor or make credibility determinations.  See e.g., Wilson v. Lawrence County, 260 F.3d 946, 951 (8th Cir. 2001)("arguments asserting qualified immunity rest largely on ignoring disputed facts in the record and asking this court to resolve factual disputes in [defendant's] favor.").

### 4. Conclusion

I therefore recommend that Defendants' motions for summary judgment (Docs. 32-34 & 38-40) be granted in part and denied in part. Specifically, the motions should be granted with respect to all claims asserted against Officer Timothy Faubus and all official capacity claims. The motions should be denied with respect to the individual capacity claim against Officer Kristopher Arthur.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 11th day of March 2013.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE